## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

**WP COMPANY LLC**
**d/b/a THE WASHINGTON POST**

    1301 K Street NW
    Washington, DC 20071

                Plaintiff,

v.

**DEPARTMENT OF THE AIR FORCE**

    1670 Air Force Pentagon
    Washington, DC 20330

**DEPARTMENT OF THE ARMY**

    101 Army Pentagon
    Washington, DC 20310

**UNITED STATES COAST GUARD**

    2703 Martin Luther King Jr. Ave. SE
    Washington, DC 20593

**UNITED STATES CUSTOMS AND**
**BORDER PROTECTION**

    1300 Pennsylvania Ave. NW
    Washington, DC 20229

                Defendants.

Case No.

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

Plaintiff WP Company LLC d/b/a *The Washington Post* (the "*Post*") brings this suit pursuant to the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, for declaratory, injunctive, and other appropriate relief, against the Department of the Air Force ("the Air Force"), Department of the Army ("the Army"), United States Coast Guard ("the Coast Guard"), and United States Customs and Border Protection ("CBP") (collectively, the "Defendants"). In support thereof, the *Post* states as follows:

**INTRODUCTION**

1.      On January 29, 2025, an Army helicopter collided mid-air with a passenger airliner on approach to Ronald Reagan Washington National Airport ("Reagan National Airport"), killing all 67 people on board the two aircrafts.

2.      In the aftermath of the collision, the National Transportation Safety Board ("NTSB") issued "urgent safety recommendations" concerning the helicopter routes near Reagan National Airport, *see Aviation Investigation Preliminary Report*, NTSB (Mar. 11, 2025) ("NTSB Report"),[1] which included banning certain helicopter flights near the airport after having found an "an intolerable risk to aviation safety." *See* Ian Duncan & Lori Aratani, *NTSB Recommends Ban on Certain Helicopter Flights Near National Airport*, Wash. Post (Mar. 11, 2025) ("*NTSB Recommends Ban*").[2]

3.      As the *Post* has reported, the airspace where the collision occurred "poses some of the most complex challenges in the country for pilots, requiring them to rely on layers of procedures and electronic safeguards to avoid a catastrophe." Ian Duncan et al., *D.C. Crash Took Place in Congested Airspace Shared by Jets, Helicopters*, Wash. Post (Jan. 30, 2025) ("*Congested Airspace*").[3]

4.      Lawmakers, pilots, and experts have long expressed concern about the congested airspace, with one retired pilot describing the January 29 collision as "a disaster waiting to

---

[1] *See* http://ntsb.gov/investigations/Documents/DCA25MA108%20Prelim.pdf.

[2] *See* https://www.washingtonpost.com/business/2025/03/11/airliner-helicopter-crash-collision-ntsb-report.

[3] *See* https://www.washingtonpost.com/business/2025/01/30/reagan-airport-airspace-plane-crash-washington-dc.

happen." Ryan J. Foley et al., *Pilots Have Long Worried About DC's Complex Airspace Contributing to a Catastrophe*, Associated Press (Jan. 30, 2025).[4]

5.       Government helicopter flights have contributed to the significant air traffic near Reagan National Airport. *Congested Airspace*.

6.       Pursuant to FOIA, the *Post* submitted requests to the four agency Defendants seeking aircraft logs and other records related to government helicopter flights by units that operate in the Washington, D.C. area.

7.       Despite the immense and urgent public interest in this information, none of the Defendants have substantively responded to the *Post*'s requests for records.

8.       Releasing the records that the *Post* has requested will inform the public about "what their government is up to," *Dep't of Justice v. Reporters Comm. for Freedom of Press*, 489 U.S. 749, 773 (1989), with respect to the operation of government helicopter flights in one of the nation's busiest and most complex airspaces.

## PARTIES

9.       Plaintiff, the *Post*, is a news organization based in Washington, D.C. It publishes the leading daily newspaper, by print circulation, in the nation's capital, as well as the website washingtonpost.com, which is among the most widely viewed news sites in the U.S., reaching tens of millions of unique visitors per month, according to independent auditor comScore. The *Post* also offers an array of mobile, tablet, and digital publishing products, and licenses its proprietary digital experience platform, Arc XP, to more than 1,900 other websites. But

---

[4] *See* https://apnews.com/article/american-airlines-5342-blackhawk-reagan-national-airport-81a43f2ba5cc59cbe9273fa593f1e9cf.

outstanding journalism remains the core of the *Post*'s work – and has been recognized with more than 70 Pulitzer Prizes since 1917.

10.    Defendant the Air Force is a component of the Department of Defense and is an agency within the meaning of 5 U.S.C. § 552(f)(1).  The Air Force has possession and control of records requested by the *Post*.

11.    Defendant the Army is a component of the Department of Defense and is an agency within the meaning of 5 U.S.C. § 552(f)(1).  The Army has possession and control of records requested by the *Post*.

12.    Defendant the Coast Guard is a component of the Department of Homeland Security and is an agency within the meaning of 5 U.S.C. § 552(f)(1).  The Coast Guard has possession and control of records requested by the *Post*.

13.    Defendant CBP is a component of the Department of Homeland Security and is an agency within the meaning of 5 U.S.C. § 552(f)(1).  CBP has possession and control of records requested by the *Post*.

## JURISDICTION AND VENUE

14.    This action arises under FOIA.  This Court has subject matter jurisdiction over this action and personal jurisdiction over the parties pursuant to 5 U.S.C. § 552(a)(4)(B) & (a)(6)(C)(i).  This Court also has jurisdiction over this action pursuant to 28 U.S.C. § 1331.

15.    Venue is proper in this judicial district under 5 U.S.C. § 552(a)(4)(B).

## FACTUAL ALLEGATIONS

### The January 29, 2025 Collision Near Reagan National Airport

16.    On the evening of January 29, 2025, an Army helicopter and an American Airlines passenger jet, operating as American Eagle Flight 5342, collided mid-air while the

airliner was preparing to land at Reagan National Airport near Washington D.C. Jenny Gathright et al., *The Final Seconds – and Grim Aftermath – of D.C. Plane Crash That Killed 67*, Wash. Post (Jan. 31, 2025).[5]

17.    The collision killed 67 people, including the airliner's 60 passengers, two pilots, and two flight attendants, and the helicopter's crew of three. *Id.*

18.    The helicopter involved in the collision, a UH-60 Black Hawk, was assigned to Bravo Company of the 12th Aviation Battalion operating out of Davison Army Airfield at Fort Belvoir. *See* NTSB Report at 1, 10; *see also American Airlines Plane Collides With Helicopter in D.C., Crashes Into Potomac River*, Wash. Post (Jan. 29, 2025) ("*Plane Collides*").[6]

19.    Military officials reported that the helicopter was on a training flight at the time of the collision. *Plane Collides*; *see also* NTSB Report at 1 (the purpose of the flight was the "pilot's annual standardization evaluation with the use of night vision goggles").

20.    The day after the collision, Secretary of Defense Pete Hegseth stated that the "military does dangerous things" and that "a mistake was made." Dan Lamothe et al., *D.C. Airport Disaster Jars Choreography of Military, Civilian Aircraft*, Wash. Post (Jan. 30, 2025).[7]

21.    On January 31, 2025, the Federal Aviation Administration ("FAA") issued a notice temporarily prohibiting helicopter traffic from operating in certain airspace near Reagan National Airport, but the ban exempted "lifesaving medical support, active law enforcement, active air defense, or presidential transport helicopter missions." *See U.S. Transportation*

---

[5] *See* https://washingtonpost.com/dc-md-va/2025/01/31/dc-plane-crash-happened-potomac-river.

[6] *See* https://www.washingtonpost.com/dc-md-va/2025/01/29/aircraft-crash-potomac.

[7] *See* https://www.washingtonpost.com/national-security/2025/01/30/black-hawk-helicopters-dc-plane-crash.

*Secretary Announces New FAA Action to Ensure Safety in Airspace*, Dep't of Transp. (Jan. 31, 2025);[8] *see also* NTSB Report at 18.

22.    The NTSB, in its preliminary investigation of the collision, analyzed data regarding encounters between helicopters and commercial aircraft near Reagan National Airport from 2011 through 2024 and found that "at least one" traffic alert and collision avoidance system resolution advisory "was triggered per month due to proximity to a helicopter," and in "over half of these instances, the helicopter may have been above the route altitude restriction." NTSB Report at 18; *see also* Michael Laris, *4 Key Takeaways from the NTSB Reports on the Deadly D.C. Plane Crash*, Wash. Post (Mar. 11, 2025) ("*4 Key Takeaways*") ("Numerous cockpit alerts have been triggered in recent years because of the proximity of helicopters and planes near [Reagan National Airport].").[9]

23.    At a March 11, 2025 news conference, NTSB officials said that FAA procedures governing the airspace near Reagan National Airport had allowed for an "intolerable risk to aviation safety by increasing the chances of a midair collision." *NTSB Recommends Ban*; *see also 4 Key Takeaways*.

24.    The NTSB, in a report dated March 7, 2025, "urge[d] the [FAA] to take immediate action" on safety recommendations "concerning the potential for midair collisions" between airplanes and helicopters near Reagan National Airport. *See Deconflict Airplane and*

---

[8] *See* https://www.transportation.gov/briefing-room/us-transportation-secretary-announces-new-faa-action-ensure-safety-airspace.

[9] *See* https://www.washingtonpost.com/dc-md-va/2025/03/11/dc-plane-crash-helicopter-ntsb-report-takeaways.

*Helicopter Traffic in the Vicinity of Ronal Reagan Washington National Airport*, NTSB (Mar. 7, 2025) at 1.[10]

26.    Specifically,  the NTSB issued two "urgent" recommendations:  (1) to prohibit operations on a certain helicopter route while two runways at Reagan National Airport are being used for departures and arrivals; and (2) to develop an alternative helicopter route to use when the previously-mentioned route is closed.  *Id.* at 9.

26.    On March 11, 2025, Secretary of Transportation Sean Duffy announced that the FAA was accepting the NTSB's recommendations and that its restrictions were "a continuation of the immediate action" it took to "restrict air space for helicopter operations" following the collision.  *U.S. Transportation Secretary Sean P. Duffy Announces Permanent FAA Actions to Secure Airspace Over Nation's Capital Following NTSB Preliminary Report*, Dep't of Transp. (Mar. 11, 2025).[11]

27.    The *Post* provided breaking news coverage of the collision,  *see, e.g.*, *Plane Collides*, and continues to investigate and report on the airspace near Reagan National  Airport, *see, e.g.*, Aaron C. Davis et al., *Approach for Reagan National's Runway 33 Is Within Feet of Helicopter Corridor*, Wash. Post (Feb. 4, 2025) ("*Approach for Reagan*");[12] Júlia Ledur et al., *Maps Show How D.C. Plane Crash Occurred in Reagan National's Congested Airspace*, Wash. Post (Jan. 31, 2025) ("*Maps Show*").[13]

---

[10] *See* https://www.ntsb.gov/investigations/AccidentReports/Reports/AIR2501.pdf.

[11] *See* https://www.transportation.gov/briefing-room/us-transportation-secretary-sean-p-duffy-announces-permanent-faa-actions-secure.

[12] *See* https://www.washingtonpost.com/investigations/2025/02/04/dca-close-calls-plane-collisions-history.

[13] *See* https://www.washingtonpost.com/dc-md-va/2025/01/31/dc-plane-crash-maps-reagan-airport-airspace.

28.    The *Post*'s reporting explains that "[c]ongestion in the skies and on runways and taxiways around the airport has raised safety concerns for years." *Congested Airspace*.

29.    For example, a law passed in 2024 increasing round-trip flights to Reagan National Airport faced opposition from lawmakers who were concerned that additional flights "could impair safety" on an already "overburdened runway." *See* Letter from U.S. Senators (Apr. 29, 2024).[14]

30.    Significant helicopter flight traffic, including helicopter flights operated by government agencies, contributes to the congested airspace near Reagan National Airport. *See Congested Airspace*.

31.    "More than 100 helicopters a day routinely fly at low altitudes near the airport along a river corridor, including in and out of planes' takeoff and landing routes." *Maps Show*.

32.    Helicopter flights near Reagan National Airport "have been the source of close calls and worries about crashes for years." Lori Aratani et al., *Helicopters Flying Along Potomac Frequently Pose Dangers to Passenger Jets*, Wash. Post (Jan. 30, 2025).[15]

33.    For example, the *Post* reported that in the week leading up to the collision, two planes needed to abort their landings at Reagan National Airport due to the risk of possible collision with a helicopter. *Id.*

34.    A 2021 report from the Government Accountability Office reported that between 2017 and 2019, approximately 88,000 helicopter flights operated within 30 miles of Reagan

---

[14] *See* https://www.warner.senate.gov/public/_cache/files/d/8/d83dbbd4-0543-444b-ae2c-30be8d6962fc/48022817A6E6A247D20D89CB85233025.42924dearcolleagueonslotandperimeter.pdf

[15] *See* https://www.washingtonpost.com/business/2025/01/30/dc-helicopters-potomac-river-dangers.

National Airport, with military flights making up more than 37 percent of those flights, and other government flights making up more than 20 percent. *See* U.S. Gov't Accountability Off., GAO-21-200, *Aircraft Noise: Better Information Sharing Could Improve Responses to Washington, D.C. Area Helicopter Noise Concerns* ("GAO Report").[16]

35.    Government helicopter flights near Reagan National Airport include those that "ferry cabinet officials, lawmakers and other V.I.P.s across the area," such as certain flights operated by the Army's 12th Aviation Battalion, the unit involved in the January 29 collision, which is considered "the V.I.P taxi service of the federal government in Washington." Helene Cooper & Eric Schmitt, *The Reason Army Helicopters Train in Washington's Busy Skies*, N.Y. Times (Jan. 30, 2025).[17]

36.    Secretary Duffy has questioned the use of non-essential military helicopter flights near Reagan National Airport, stating: "If we have generals who are flying in helicopters for convenience through this airspace, that's not acceptable. Get a damn Suburban and drive – you don't need to take a helicopter." David Shepardson, *US Agency to Make Restrictions on Helicopters Permanent After Washington Mid-Air Collision*, Reuters (Mar. 11, 2025).[18]

37.    In addition to the Army, each of the other Defendants – the Air Force, the Coast Guard, and CBP – operate helicopter flights in the Washington, D.C. area. *See* GAO Report.

---

[16] *See* https://www.gao.gov/assets/gao-21-200.pdf.

[17] *See* https://www.nytimes.com/2025/01/30/us/politics/army-helicopter-crash.html.

[18] *See* https://www.reuters.com/world/us/ntsb-release-preliminary-report-into-fatal-washington-jet-helicopter-collision-2025-03-11.

**The *Post*'s FOIA Requests**

38.     Access to records regarding the operation of Defendants' helicopter flights would aid understanding of the government's use of the "busy helicopter corridors that run along the Potomac [River]," that leave "little margin for error." *Approach for Reagan*.

39.     On February 10, 2025, therefore, the *Post* submitted a FOIA request to each of the Defendants seeking information related to helicopter flights by units that operate in the Washington, D.C. area.[19]

The Air Force Request

40.     On February 10, 2025, the *Post* submitted a FOIA request to the Air Force seeking: "All passenger manifests and aircraft flight logs and similar records for all helicopter flights conducted by the Air Force 89th Airlift Wing, Special Air Missions" from January 1, 2017 to the present. A true and correct copy of the request is attached as Exhibit 1.

41.     The Air Force acknowledged receipt of the *Post*'s request on February 10, 2025 and assigned it tracking number 2025-02898-F. A true and correct copy of the Air Force's acknowledgement email is attached as Exhibit 2.

42.     To date, the Air Force has not produced any records responsive to the *Post*'s request.

43.     To date, the Air Force has not informed the *Post* as to the scope of the records, if any, that the agency will produce in response to the request.

44.     To date, the Air Force has not provided a timetable for the production of any records in response to the *Post*'s request.

---

[19] The Post also submitted a FOIA request to the U.S. Marine Corps, which issued a timely response denying that request. The Post has administratively appealed that denial.

The Army Request

45.    On February 10, 2025, the *Post* submitted a FOIA request to the Army seeking: "All passenger manifests and aircraft flight logs and similar records for all helicopter flights conducted by the Army's 12th Aviation Battalion, Priority Air Transport" from January 1, 2017 to the present. A true and correct copy of the request is attached as Exhibit 3.

46.    The Army received the *Post*'s request on February 10, 2025. *See id.*

47.    To date, the Army has not produced any records responsive to the *Post*'s request.

48.    To date, the Army has not informed the *Post* as to the scope of the records, if any, that the agency will produce in response to the request.

49.    To date, the Army has not provided a timetable for the production of any records in response to the *Post*'s request.

The Coast Guard Request

50.    On February 10, 2025, the *Post* submitted a FOIA request to the Coast Guard seeking: "All passenger manifests and aircraft flight logs and similar records for all helicopter flights conducted by Air Station Atlantic City, the rotary aircraft unit that serves the Washington, D.C. area" from January 1, 2017 to the present. A true and correct copy of the request is attached as Exhibit 4.

51.    On February 13, 2025, the Coast Guard acknowledged in an email that the request was received on February 10, 2025 and assigned it tracking number 2025-CGFO-00987. A true and correct copy of the Coast Guard's acknowledgment email is attached as Exhibit 5.

52.    To date, the Coast Guard has not produced any records responsive to the *Post*'s request.

53.    To date, the Coast Guard has not informed the *Post* as to the scope of the records, if any, that the agency will produce in response to the request.

54.     To date, the Coast Guard has not provided a timetable for the production of any records in response to the *Post*'s request.

<u>The CBP Request</u>

55.     On February 10, 2025, the *Post* submitted a FOIA request to CBP seeking: "All passenger manifests and aircraft flight logs and similar records for all helicopter flights conducted by Customs and Border Protection, Air and Marine Operations" from January 1, 2017 to the present. A true and correct copy of the request is attached as Exhibit 6.

56.     On February 11, 2025, CBP acknowledged in an email that the request was received on February 10, 2025 and assigned it tracking number CBP-FO-2025-063486. A true and correct copy of CBP's acknowledgement email is attached as Exhibit 7.

57.     On February 18, 2025, CBP sent an email to the *Post* requesting that it narrow its request. A true and correct copy of CBP's February 18 email is attached as Exhibit 8.

58.     On February 21, 2025, the *Post* sent an email to CBP amending its request to records relating to "all helicopter flights conducted by Customs and Border Protection, Air and Marine Operations *operating in the Washington DC area, including flights that take off from or land at Quantico, Ft Meade, and other bases in the DC area.*" A true and correct copy of the *Post*'s February 21 email is attached as Exhibit 9.

59.     To date, CBP has not produced any records responsive to the *Post*'s request.

60.     To date, CBP has not informed the *Post* as to the scope of the records, if any, that the agency will produce in response to the request.

61.     To date, CBP has not provided a timetable for the production of any records in response to the *Post*'s request.

## CLAIM FOR RELIEF

### COUNT I
### Declaratory and Injunctive Relief:
### Constructive Denial in Violation of FOIA, 5 U.S.C. § 552

62.     The *Post* realleges and incorporates by reference all previous paragraphs as if fully set forth herein.

63.     FOIA provides this Court with "jurisdiction to enjoin [Defendants] from withholding agency records and to order the production of any agency records improperly withheld from [the *Post*]." 5 U.S.C. § 552(a)(4)(B).

64.     The withheld records the *Post* seeks, which are the subject of the *Post*'s request to Defendants, are agency records within Defendants' control.

65.     Defendants received the *Post*'s requests on February 10, 2025.

66.     Pursuant to FOIA, each Defendant was required to make and communicate to the *Post* a "determination" on its request no later than March 11, 2025. 5 U.S.C. § 552(a)(6)(A)(ii).

67.     Even allowing for three days tolling while the *Post* amended its request, CBP was required to make and communicate to the *Post* a "determination" on its request no later than March 14, 2025. 5 U.S.C. § 552(a)(6)(A)(ii).

68.     To date, none of the Defendants has made and communicated to the *Post* a "determination" on its respective request within the meaning of 5 U.S.C. § 552(a)(6)(A)(ii). Defendants have instead failed to respond to those requests and thus constructively denied them.

69.     There is no basis under FOIA to withhold, in whole or in part, the records that the *Post* requested. Defendants have wrongfully withheld agency records in violation of FOIA.

70.     The *Post* requests a declaratory judgment that Defendants have violated FOIA and that the *Post* is entitled to immediately receive the requested records.

71.    The *Post* further requests that, pursuant to FOIA, the Court issue an injunction directing Defendants to produce the requested records in full and setting a deadline for compliance.

## REQUEST FOR RELIEF

WHEREFORE, the *Post* respectfully requests that this Court:

A.    Declare Defendants' failure to provide responsive records unlawful under FOIA;

B.    Enter an injunction, pursuant to 5 U.S.C. § 552(a)(4)(B), directing Defendants to make the requested records available to the *Post*, unredacted, and without further delay, and setting a deadline for compliance;

C.    Provide for expeditious proceedings in this action;

D.    Award the *Post* its costs and reasonable attorneys' fees incurred in this action pursuant to 5 U.S.C. § 552(a)(4)(E); and

E.    Grant such other and further relief as the Court may deem just and proper.

Dated: April 8, 2025              Respectfully submitted,

BALLARD SPAHR LLP

/s/ *Charles D. Tobin*
Charles D. Tobin (#455593)
Maxwell S. Mishkin (#1031356)
1909 K Street NW, 12th Floor
Washington, DC 20006
Tel: (202) 661-2200 | Fax: (202) 661-2299
tobinc@ballardspahr.com
mishkinm@ballardspahr.com

Anna O. Kaul (*pro hac vice forthcoming*)
2000 IDS Center
80 South 8th Street
Minneapolis, MN 55402-2119
Tel: (612) 371-3211 | Fax: (612) 371-3207
kaula@ballardspahr.com

*Counsel for Plaintiff WP Company LLC*
*d/b/a The Washington Post*